```
           IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| OTSUKA PHARMACEUTICAL CO., LTD., | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | Civil Action No. 14-8074 (JBS/KMW) |
| v. | |
| APOTEX CORP., APOTEX INC. and HETERO LABS LTD., | **MEMORANDUM OPINION** |
| Defendants. | |

**SIMANDLE, Chief Judge:**

This patent infringement action, one of twenty-six related actions under the Hatch-Waxman Act, 35 U.S.C. §§ 271, 281, generally concerns Plaintiff Otsuka Pharmaceutical Co, Ltd.'s (hereinafter, "Otsuka") position that Apotex Corp.'s and Apotex Inc.'s (collectively, "Apotex") proposed generic aripiprazole product infringes one or more claims of four of the various patents covering Otsuka's Abilify® aripiprazole product, U.S. Patent Nos. 8,017,615 ("the '615 patent"), 8,580,796 ("the '796 patent"), 8,642,760 ("the '760 patent"), and 8,759,350 ("the '350 patent" and collectively, the "Patents-in-Suit").

Otsuka now moves to dismiss Apotex's Ninth and Tenth Counterclaims for "Unlawful Monopolization" and for "Patent Misuse" (hereinafter, the "Counterclaims") pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, to

bifurcate and stay Apotex's Counterclaims pending resolution of the primary patent infringement issues pursuant to Federal Rule of Civil Procedure 42(b).  [Docket Item 102.]  The Court recently addressed the viability of substantively identical, but slightly less developed, counterclaims in Otsuka Pharmaceutical Co., Ltd. v. Torrent Pharm. Ltd., Inc., ___ F. Supp. 3d ____, No. 14-1078, 2015 WL 3869677 (D.N.J. June 22, 2015), and reaches substantially the same result in connection with the pending motion.[1]  For the reasons that follow, Otsuka's motion will be granted in part and denied in part.  The Court finds as follows:

    1.   As this Court has summarized on numerous occasions, Otsuka holds New Drug Application (hereinafter, "NDA") No. 21-436, approved by the Food and Drug Administration (hereinafter, the "FDA"), for aripiprazole tablets, which Otsuka markets under the trade name Abilify®.  (See Am. Compl. at ¶¶ 1, 18, 20.)  In connection with Abilify®'s listing in the Orange Book, the FDA's book of drug products approved under the Food, Drug, and Cosmetic Act (hereinafter, the "Orange Book"), 21 U.S.C. § 355(j), Otsuka identifies the Patents-in-Suit, and discloses

---

[1] Following the Court's decision in Torrent, Apotex sought leave to file a sur-reply, in order to address the decision's potentially "dispositive" impact on the pending motion.  [Docket Item 142.]  Because the Torrent decision directly impacts the pending motion, the Court has considered Apotex's sur-reply.  On the other hand, Otsuka's reply brief, filed on June 29, 2015, seven days after the Torrent Opinion of essentially the identical issues in the related case, makes no mention of the Torrent decision.  (See Otsuka's Reply.)

Abilify®'s active ingredient as "aripiprazole," the dosage form as a "tablet" or "oral," and the strengths as 2 mg, 5 mg, 10 mg, 15 mg, 20 mg, and 30 mg.  (Countercl. at ¶¶ 32-34.)

2.  In late 2014, Apotex filed Abbreviated New Drug Application (hereinafter, "ANDA") No. 78-583 with the FDA, seeking approval to market generic 2 mg, 5 mg, 10 mg, 15 mg, 20 mg, and 30 mg aripiprazole tablets in the United States, prior to expiration of the Patents-in-Suit.  (See Countercl. at ¶¶ 35-37.)  Apotex's ANDA filing included a "paragraph IV certification" pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(IV), in which Torrent set forth its assertion that the Abilify® patents would not be infringed by the commercial manufacture, use, or sale of Apotex's generic aripiprazole product.  (See id.)

3.  On November 12, 2014, Apotex then mailed notice of its ANDA certification to Otsuka, and provided a detailed explanation of the bases for Apotex's position that its generic aripiprazole tablets would not infringe any valid or enforceable claim of the Orange Book-listed Patents-in-Suit.  (Id. at ¶ 38.)  In order to substantiate its non-infringement and/or invalidity positions, Apotex's notice "included an Offer of Confidential Access" to its ANDA and supporting materials.  (Id.)

4.  Despite Apotex's assertions, Otsuka filed an initial and Amended Complaint in this District, alleging that Apotex's proposed generic product "will, if approved and marketed,"

infringe at least one claim of the Patents-in-Suit.  (Am. Compl. at ¶¶ 24, 34, 44, 54.)  On March 23, 2015, Apotex responded to Otsuka's Amended Complaint and, as relevant here, asserted Counterclaims for "Unlawful Monopolization in Violation of the Sherman Act: Sham Litigation" and for a "Declaratory Judgment of Unenforceability" of the Patents-in-Suit for "Patent Misuse." (Countercl. at ¶¶ 72-118.)

5.   Apotex's "Unlawful Monopolization" Counterclaim alleges, in particular, that Otsuka "has the power to control prices and/or exclude competition in, or prevent entry into" the aripiprazole market, and claims that Otsuka has wielded that power "to monopolize" the market.  (Id. at ¶¶ 80-81.)  Indeed, Apotex claims that Otsuka has "engaged" in a "predatory scheme to monopolize" the aripiprazole market through its institution of "objectively baseless and sham judicial proceedings designed to continue its monopoly of aripiprazole tablets" and to prevent Apotex, among other generic companies, from competing in the aripiprazole market.  (Id. at ¶¶ 86-88, 106-108.)  Apotex therefore alleges that this infringement litigation amounts to "sham" and "bad faith" litigation, in violation of the Sherman and Clayton Acts, 15 U.S.C. §§ 2, 15, and 26.  (Id. at ¶¶ 72-110.)

6.    Apotex's patent misuse Counterclaim largely reiterates the allegations of its antitrust Counterclaim, and specifically

4

alleges that Otsuka filed this action without "any good faith factual or legal basis" to support its infringement positions, and for purposes of delaying Apotex's entry into the marketplace for aripiprazole tablets. (Id. at ¶¶ 111-14.) Apotex further alleges that Otsuka has, in filing and prosecuting this "baseless" action, "impermissibly broadened the physical or temporal scope" of the Patents-in-Suit and asserted the patents in order "to obtain a market benefit beyond that which inheres in the statutory patent right." (Id. at ¶¶ 115-16.)

    7.   In moving to dismiss, Otsuka argues, as it did in connection with substantially similar counterclaims in Torrent, ___ F. Supp. 3d ___, 2015 WL 3869677, that Apotex's antitrust and patent misuse Counterclaims must be dismissed, because Apotex has not alleged the "anticompetitive" or "antitrust" injury" required for antitrust standing, because Apotex's "cursory conclusions" fail to plausibly overcome Otsuka's *Noerr-Pennington* immunity, and because Apotex's patent misuse counterclaim fails as a matter of law to state a cognizable claim for patent misuse. (See Otsuka's Br. at 5-11; Otsuka's Reply at 1-5.) In the alternative, Otsuka requests that the Court follow the "'standard practice'" of bifurcating for trial the patent issues raised in this litigation from the antitrust and/or patent misuse issues. (Otsuka's Br. at 12 (citations omitted); Otsuka's Reply at 6.)

5

8. Under Federal Rule of Civil Procedure 12(b)(6), the court must generally accept as true the factual allegations of the defendant's counterclaims, and construe all "reasonable inferences" in the light most favorable to the defendant. Revell v. Port Auth. Of N.Y., N.J., 598 F.3d 128, 134 (3d Cir. 2010); see also Fleisher v. Standard Ins. Co., 679 F.3d 116, 120 (3d Cir. 2012) (same). However, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" fails to suffice. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Rather, the "well-pled factual allegations" must be sufficient to demonstrate a plausible "entitlement to relief." Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Umland v. PLANCO Fin. Serv., Inc., 542 F.3d 59, 64 (3d Cir. 2008).

9. As stated above, Otsuka moves to dismiss Apotex's antitrust Counterclaim for lack of standing and on immunity grounds, and moves to dismiss Apotex's patent misuse Counterclaim for failure to state a plausible claim for relief. For substantially the reasons stated in Torrent, the Court will deny Otsuka's motion to the extent it seeks the dismissal of Apotex's Counterclaims. Nevertheless, the Court will briefly address each issue in turn.

6

10.  A party suing under federal antitrust laws, as here, must meet the prudential requirement of "'antitrust standing.'"[2] Ethypharm S.A. France, 707 F.3d at 232 (citation omitted).  In Ethypharm S.A. France, the Court of Appeals for the Third Circuit outlined a five-factor test, with the second, "antitrust injury," constituting the essential precondition for antitrust standing.  Id. (citation omitted).  In other words, in the absence of a plausible allegation of antitrust injury, the only factor presently challenged by Otsuka, the Court need not reach the remaining factors.

11.  As stated by this Court in Torrent,

> In order to plead an antitrust injury, the party must allege facts showing (1) that it suffered an injury of the type the antitrust laws seek to prevent, e.g., anticompetitive behavior, and (2) that the injury resulted from the adversary's unlawful or anti-competitive acts. See In re Niaspan Antitrust Litig., 42 F. Supp. 3d 735, 753 (E.D. Pa. 2014) (quoting In re K-Dur Antitrust Litig., 338 F. Supp. 2d 517, 534 (D.N.J. 2004)). The federal antitrust laws, however, foster "'the protection of competition not competitors.'" Race Tires Am., Inc. v. Hoosier Racing Tire Corp., 614 F.3d 57, 76-77 (3d Cir. 2010); see also Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 488 (1977) (citation omitted) (noting that Congress enacted the antitrust laws "for 'the protection of competition, not competitors'"). As a result, the pleaded facts must show "that 'the challenged action has had an actual adverse effect on competition as a whole in the relevant market,'"

---

[2] The Court's decision in Torrent provides a detailed discussion of the background of this "prudential requirement," together with an explanation of the differences between Article III constitutional standing and antitrust standing. ___ F. Supp. 3d ____, 2015 WL 3869677, at *4.

> rather than just an adverse effect on the particular competitor. Irish v. Ferguson, 970 F. Supp. 2d 317, 365 (M.D. Pa. 2013) (citations omitted); see also Eichorn v. AT&T Corp., 248 F.3d 131, 140 (3d Cir. 2001) (noting that an antitrust injury does not lie unless the allegedly anticompetitive conduct "has a wider impact on the [overall] competitive market").

Torrent, ___ F. Supp. 3d ____, 2015 WL 3869677, at *4 (footnote omitted).

12.  The Court rejects, at the outset, Otsuka's position that Apotex cannot, under Ethypharm S.A. France, be considered a competitor for purposes of antitrust standing, due to its lack of FDA approval.  (See Otsuka's Br. at 5-6.)  In Ethypharm S.A. France, the Court of Appeals for the Third Circuit found the plaintiff could not "be considered a competitor for purposes of antitrust injury," because "legal barriers particular to the pharmaceutical market" precluded the plaintiff's from marketing a competing product. 707 F.3d at 236.  In so finding, however, the Third Circuit relied upon the fact that the plaintiff acted only as the foreign manufacturer of the product, and could not "directly supply the United States market" with the disputed drug.  Id.  Indeed, the plaintiff had specifically relinquished its right to sell and distribute the product in the United States through a third-party license agreement.  Id.  In other words, the Third Circuit's determination did not hinge upon the status of the plaintiff's FDA approval,[3] and the legal barriers

---

[3] Indeed, the Third Circuit expressly distinguished its decision from the situation where, as here, the plaintiff has "filed a

actually identified by, and relied upon, in Ethypharm S.A. France are plainly absent here, because Otsuka's own Amended Complaint identifies Apotex's intention to manufacture and directly distribute/sell its proposed generic aripiprazole product. (See Am. Compl. at ¶ 6.)

13. Moreover, if the Court accepted Otsuka's position, "antitrust standing under the Hatch-Waxman Act would be wholly contingent on the vagaries of the timing of agency action." Bristol-Myers Squibb Co. v. Ben Venue Labs., 90 F. Supp. 2d 540, 545 (D.N.J. 2000). This would, in turn, create an "anomalous" result, because generic defendants have "little practical incentive" to pursue final agency approval during the pendency of infringement actions, and are often "better served" by directing "their resources toward defense of the infringement action." Id. For these reasons, the Court holds that Apotex has standing as a competitor for purposes of an antitrust injury because it is an ANDA filer intending to manufacture and directly distribute generic aripiprazole in the United States market awaiting final FDA approval. The Court next addresses whether Apotex's allegations prove otherwise sufficiently plausible on the issue of antitrust injury.

---

Drug Master File with the FDA and 'set forth other required information for FDA approval' of its drug." 707 F.3d at 236 n. 20 (quoting Chemi SpA v. GlaxoSmithKline, 356 F. Supp. 2d 495, 497 (E.D. Pa. 2005)).

14. The "hallmark" for evaluating the plausibility of an allegation of antitrust injury is whether "the actions alleged to be anticompetitive when viewed 'as a whole' bear consequence for the overall market, rather than only for an individual competitor." Torrent, ___ F. Supp. 3d ____, 2015 WL 3869677, at *5 (quoting TransWeb, LLC v. 3M Innovative Props. Co., No. 10-4413, 2011 WL 2181189, at *18 (D.N.J. June 1, 2011)). Here, Apotex's antitrust Counterclaim alleges, in essence, that Otsuka has initiated meritless infringement actions and subsequently pursued preliminary injunctions against ANDA filers, in order "to prevent any and all competitors from competing in the marketplace" and to maintain its exclusive monopoly over the aripiprazole market. (Countercl. at ¶¶ 72-110.) Apotex further alleges that Otsuka's "exclusionary, anticompetitive and unlawful actions" have excluded "alternative source[s]" of aripiprazole tablets and have, in particular, forestalled and frustrated Apotex's ability to compete in the aripiprazole market. (Id. at ¶¶ 106-10.)

15. For largely the reasons stated in Torrent, Apotex's Counterclaim plausibly alleges the elements of an antitrust injury, namely, "an injury of the type protected by the antitrust laws, and that the injury derived, at least in part, from anti-competitive acts." Torrent, ___ F. Supp. 3d ____, 2015 WL 3869677, at *5-*6. Indeed, the pursuit of litigation

10

that forestalls entry into the generic market and effectively extends a long-standing monopoly, as alleged here, constitutes precisely the type of "'anti-competitive behavior'" that the antitrust laws seek to redress.[4]  See id. (finding essentially identical allegations sufficient).  For these reasons, the Court finds that Apotex's allegations, accepted as true, sufficiently state an antitrust injury, and rejects Otsuka's position that Apotex's antitrust Counterclaim should be dismissed for lack of antitrust standing.[5]  Therefore, the Court turns to Otsuka's position that *Noerr-Pennington* immunity bars Apotex's antitrust Counterclaim.

    16.  As stated by this Court in Torrent,

> Under the *Noerr-Pennington* doctrine, a patent owner's initiation of patent infringement litigation receives presumptive immunity from attack under the antitrust laws.  See generally Eastern R.R. Presidents

---

[4] As in Torrent, the Court again notes that Otsuka has initiated litigation against every ANDA filer.  See Torrent, ___ F. Supp. 3d ___, 2015 WL 3869677, at *5 n.6 (noting Otsuka's filings as a matter of public record).  Indeed, following Torrent, Otsuka filed its twenty-sixth related infringement action against an ANDA filer.  See Otsuka Pharm. Co., Ltd. v. Macleods Pharms. Ltd., Civil Action No. 15-5109 (JBS/KMW) (filed July 2, 2015).

[5] Moreover, the existence of antitrust injury "involves complex questions of fact," ill-suited for resolution upon a motion to dismiss.  Schuylkill Energy Res., Inc. v. Pa. Power & Light Co., 113 F.3d 405, 417 (3d Cir. 1997) (citing Brader v. Allegheny Gen. Hosp., 64 F.3d 869, 876 (3d Cir. 1995) (collecting cases)); see also In re Niaspan Antitrust Litig., 42 F. Supp. 3d at 757 n.19 (collecting cases that have declined to resolve the existence of antitrust injury through motions to dismiss).  As a result, even if Apotex's allegations proved sparse, which they do not, resolving the issue of antitrust injury exceeds the scope of this limited Rule 12(b)(6) motion.

> Conference v. Noerr Motor Freight, 365 U.S. 127 (1961); United Mine Workers of Am. v. Pennington, 381 U.S. 657 (1965); see also Rochester Drug Co-op., Inc., 712 F. Supp. 2d at 316 (considering *Noerr-Pennington* immunity in the patent infringement context). Parties who file "sham litigation" are, however, excepted from the benefit of immunity under *Noerr-Pennington*. Prof'l Real Estate Investors v. Columbia Pictures Indus., Inc., 508 U.S. 49, 60-61 (1993). An allegation of sham litigation consists of two elements: first, "the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." Id. (internal quotations and citations omitted). Second, "the baseless lawsuit [must] conceal[] an attempt to interfere directly with the business relationships of a competitor," rather than reflect a legitimate effort to obtain judicial review. Id.

Torrent, ___ F. Supp. 3d ____, 2015 WL 3869677, at *6.

17.  Here, Otsuka argues, as it did in Torrent, that Apotex has failed to plead sufficient facts to trigger the sham litigation exception to Otsuka's presumptive *Noerr-Pennington* immunity. (See Otsuka's Br. at 7-10; Otsuka's Reply at 4-5.) Nevertheless, the Court finds Apotex's allegations even more ample than those the Court deemed sufficient in Torrent, and rejects Otsuka's argument that Apotex's Counterclaim should be dismissed on immunity grounds.

18.  Critically, Apotex alleges that it provided Otsuka with the "detailed legal and factual bases" for its position on the non-infringement of Apotex's ANDA product on November 12, 2014. (Countercl. at ¶ 89.)  On December 23, 2014, Apotex then provided Otsuka with supporting documentation of in excess of 13,000 pages, together with the raw materials and product

12

samples associated with its ANDA product. (Id. at ¶¶ 90-92.) Despite this production, however, Otsuka filed this infringement action on the following day, December 24, 2014. (Id. at ¶ 93.) Apotex therefore alleges that Otsuka filed this action without regard for the contents of Apotex's production, "despite a complete lack of evidence of infringement," and without any other objective basis to buttress its claims of infringement. (Id. at ¶¶ 93-96.) Moreover, because Otsuka "initiated litigation" despite the volume of Apotex's evidence of alleged noninfringement, Apotex submits that Otsuka filed this action "in bad faith," and "with the express purpose of achieving and maintaining monopoly power," and not in a legitimate effort to obtain judicial review. (Id. at ¶¶ 97-110.)

19. These allegations, accepted as true for purposes of this Rule 12(b)(6) motion, set forth plausible facts sufficient to overcome Otsuka's presumptive antitrust immunity under the *Noerr-Pennington* doctrine.[6] See Torrent, ___ F. Supp. 3d ____, 2015 WL 3869677, at *7 (finding essentially identical allegations sufficient, and collecting supporting case law). Moreover, even assuming the allegations proved insufficient,

---

[6] The Court rejects Otsuka's arguments concerning Apotex's Paragraph IV certification under 21 U.S.C. § 355(j)(2)(A)(vii), Celgene Corp. v KV Pharm. Co., No. 07-4819, 2008 WL 2856469 (D.N.J. July 22, 2008), and AstraZeneca AB v. Mylan Labs., Inc., 2010 WL 2079722, at *4 (S.D.N.Y. May 19, 2010) for the reasons set forth in Torrent, ___ F. Supp. 3d ____, 2015 WL 3869677, at *7 n.10.

which they do not, the inquiry into Otsuka's *Noerr-Pennington* immunity requires a detailed consideration of fact-sensitive issues, which cannot be resolved in the context of a motion to dismiss, and prior to discovery.  <u>See</u> <u>id.</u>

20.  For all of these reasons, the Court rejects Otsuka's argument that Apotex's Counterclaim should be dismissed on *Noerr-Pennington* immunity.  If, however, Apotex fails to meet its burden of proof as to "sham" litigation" upon litigation of the patent infringement claims and upon discovery as to Apotex's Counterclaims, Otsuka may renew its claim of *Noerr-Pennington* immunity.[7]  The Court next addresses whether Apotex states a plausible Counterclaim for patent misuse.

21.  The "key inquiry under the patent misuse doctrine is whether ... the patentee has "'impermissibly broaden[ed] the physical or temporal scope' of the patent grant with an anticompetitive effect."[8]  <u>Princo Corp. v. Int'l Trade Comm'n</u>, 616 F.3d 1318, 1328 (Fed. Cir. 2010) (quoting <u>Windsurfing Int'l, Inc. v. AMF, Inc.</u>, 782 F.2d 995, 1001 (Fed. Cir. 1986)).  A

---

[7] Moreover, even if Apotex ultimately overcomes *Noerr-Pennington* immunity, Apotex must still establish a substantive antitrust violation in order to succeed on its Counterclaim. <u>See</u> <u>Organon Inc. v. Mylan Pharm., Inc.</u>, 293 F. Supp. 2d 453, 461 (D.N.J. 2003) (citation omitted).  Finally, if the counterclaim allegation of "sham" litigation is itself without reasonable basis, Otsuka may invoke the constraints on baseless pleadings provided by Rule 11, Fed. R. Civ. P.
[8] In <u>Torrent</u>, the Court provided a detailed discussion of the origination of this doctrine.  <u>See</u> <u>Torrent</u>, ___ F. Supp. 3d ____, 2015 WL 3869677, at *8-*9.

14

plausible claim for patent misuse must, in turn, include an allegation that the patentee has impermissibly attempted to enlarge the scope of its patent monopoly. See, e.g., Torrent, ___ F. Supp. 3d ____, 2015 WL 3869677, at *9; Micron Tech., Inc. v. Rambus Inc., 917 F. Supp. 2d 300, 320 n.19 (D. Del. 2013); Altana Pharma AG v. Teva Pharm. USA, Inc., No. 04-2355, 2012 WL 2068611 (D.N.J. June 7, 2012); Cordance Corp. v. Amazon.com, Inc., 727 F. Supp. 2d 310, 333-34 (D. Del. July 23, 2010); In re Gabapentin Patent Litig., 648 F. Supp. 2d 641, 652 (D.N.J. 2009). As a result, in Torrent, the Court dismissed the patent misuse counterclaim without prejudice, because the counterclaim lacked the "essential allegation" of an "improper expansion of the physical or temporal breadth of the disputed patents." Torrent, ___ F. Supp. 3d ____, 2015 WL 3869677, at *9.

22. Apotex's Counterclaim, by contrast, plainly alleges that this action amounts to an impermissible attempt to prolong the life of Otsuka's long-standing monopoly in the aripiprazole market. (See generally Countercl. at ¶¶ 111-18.) Indeed, Apotex specifically alleges that Otsuka has wielded the Patents-in-Suit beyond their permissible "physical or temporal scope" in order to obtain a market advantage.[9] (Id. at ¶ 116.) These allegations, accepted as true for purposes of this Rule 12(b)(6)

---

[9] For that reason, Apotex's Counterclaim differs markedly from the patent misuse Counterclaim this Court found insufficient in Torrent. See ___ F. Supp. 3d ____, 2015 WL 3869677, at *9.

15

motion, sufficiently state a claim of patent misuse. Bayer AG v. Housey Pharmaceuticals, Inc., 169 F. Supp. 2d 328, 331 (D. Del. 2001) (finding similar allegations sufficient), aff'd, 340 F.3d 1367 (Fed. Cir. 2003).

23. The Court last addresses Otsuka's request to bifurcate and stay. Under Federal Rule of Civil Procedure 42(b), the Court may "order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims," in order to encourage "convenience, to avoid prejudice, or to expedite and economize." FED. R. CIV. P. 42(b). In determining whether to bifurcate, courts carefully balance "considerations of convenience, avoidance of prejudice, and efficiency," and must ensure the preservation of the litigant's constitutional right to a jury. Torrent, ___ F. Supp. 3d ___, 2015 WL 3869677, at *9 (citations and internal quotations omitted).

24. Considering the various factors presented in this action, and the parties' qualified agreement,[10] the Court will

---

[10] Apotex consents to Otsuka's request to bifurcate and stay Apotex's Counterclaims, but attempts to condition this consent upon Otsuka's agreement that the parties proceed with fact discovery relative to these Counterclaims. (See Apotex's Sur-reply at 5.) It is well established that "antitrust discovery can be [exceedingly] expensive." Twombly, 550 U.S. at 558. Bifurcation, in turn, aims to ensure efficiency and avoid needless expense, particularly where resolution of the primary claims may, as here, obviate the need to proceed to discovery on the remaining claims. For these reasons, the Court will stay

16

bifurcate and stay Apotex's antitrust and patent misuse Counterclaims. Critically, resolution of the patent infringement issues may moot these Counterclaims, thereby preserving judicial economy. Bifurcation of these Counterclaims from the already-complex patent infringement claims further enhances "the parties' right to jury trial by making the issues the jury must consider less complex." Warner Lambert Co. v. Purepac Pharm. Co., Nos. 98-2749, 99-5948, 00-2053, 2000 WL 34213890, *11 (D.N.J. Dec. 22, 2000) (internal quotation marks omitted).

25. For these reasons, the Court will follow the practice of separating for trial patent issues and antitrust issues. See In re Innotron Diagnostics, 800 F.2d 1077, 1084 (Fed. Cir. 1986) (affirming the severance of patent and antitrust claims as in the interests of judicial economy); see also Torrent, ___ F. Supp. 3d ____, 2015 WL 3869677, at *9-*10 (bifurcating and staying a substantively identical antitrust counterclaim); Eurand Inc. v. Mylan Pharm. Inc., No. 08-889, 2009 WL 3172197, at *2 (D. Del. Oct. 1, 2009) (granting motion to sever and stay antitrust and patent misuse counterclaims and affirmative defenses from the patent infringement action).

---

Apotex's Counterclaims for all purposes (discovery or otherwise), pending resolution of Otsuka's patent infringement claims.

26. For the reasons stated above, Otsuka's motion will be denied to the extent it seeks dismissal of Apotex's antitrust and patent misuse Counterclaims. Torrent's antitrust and patent misuse Counterclaims will, however, be bifurcated and stayed, pending resolution of the patent infringement issues.

27. An accompanying Order will be entered.

**August 11, 2015**                   **s/ Jerome B. Simandle**
Date                                           JEROME B. SIMANDLE
                                                         Chief U.S. District Judge